AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
8/13/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: EC DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

FILED
CLERK, U.S. DISTRICT COURT
08/13/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___KH___ DEPUTY

United States of America

v.

Moises Gerardo Torres Velazquez,

Defendant

Case No.  8:25-mj-00659-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of on or about August 12, 2025 in the county of Orange County in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(A) | Possession with Intent to Distribute More than 500 Grams of a Mixture or Substance Containing Methamphetamine |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Patrick D. McMahon
Complainant's signature

Patrick D. McMahon, Special Agent DEA
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   August 13, 2025

/s/ Autumn D. Spaeth
Judge's signature

City and state:  Santa Ana, California

Hon. Autumn D. Spaeth, U.S. Magistrate Judge
Printed name and title

AUSA: Lisa Lindhorst (ext. 3537)

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Patrick D. McMahon, being duly sworn, declare and state as follows:

**INTRODUCTION**

1. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). As such, I am empowered by law to conduct investigations of and make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I am a Special Agent ("SA") of the Drug Enforcement Administration ("DEA"), an agency of the U.S. Department of Justice. I have been so employed since October 2020. I am currently assigned to Los Angeles Field Division ("LAFD") Orange County District Office ("OCDO"). At the OCDO, I am assigned to Enforcement Group-1 ("ENF-1"), an enforcement group investigating narcotics trafficking and money laundering violations under Titles 18 and 21 of the United States Code. I have received 17 weeks of specialized training in Quantico, Virginia, pertaining to narcotics trafficking, money laundering, undercover operations, and electronic and physical surveillance procedures.

3. During my employment, I have received comprehensive, formal instruction on such topics as drug identification, money-laundering techniques, patterns of drug trafficking, complex conspiracies, the exploitation of narcotics traffickers' telecommunications devices, criminal law, surveillance, and other investigative techniques. I have initiated and assisted in investigations of the unlawful importation, manufacture,

possession with intent to distribute, and distribution of narcotics (including cocaine, heroin, and methamphetamine), the laundering of narcotics proceeds, and conspiracies associated with narcotics offenses. In conducting these investigations, I have utilized a variety of investigative techniques and resources, including but not limited to such techniques as surveillance, confidential sources, search warrants, telephone toll analysis, undercover operations, and wire intercept communications analysis in Title III and California State wiretap investigations.

## PURPOSE OF AFFIDAVIT

4.  This affidavit is made in support of a criminal complaint for **Moises Gerardo TORRES VELAZQUEZ** (TORRES VELAZQUEZ) for a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A) (Possession with Intent to Distribute More than 500 Grams of a Mixture or Substance Containing Methamphetamine).

5.  Unless otherwise stated, the facts set forth in this affidavit are based upon my personal observations; my training and experience; oral and written reports about this investigation; and physical surveillance conducted by federal agents or local law enforcement agencies, which has been reported to me either directly or indirectly. Unless otherwise noted, when I assert that a statement was made, I have either heard the statement directly or the statement was reported to me by another law enforcement officer, either directly or in a written report. This affidavit is intended to show merely that

there is sufficient probable cause for the requested complaint and arrest warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversation and statements described in this affidavit are related in substance and in part only.

## SUMMARY OF PROBABLE CAUSE

6. Since January 2025, DEA OCDO Special Agents ("SA") have been investigating a Mexico-based source of supply ("SOS") for methamphetamine who goes by the name "CHALO."

7. Between August 10, 2025 and August 12, 2025, at the direction of DEA SAs, a DEA Confidential Source ("CS")[1] conducted recorded phone calls and text messages with CHALO and an unknown male who used phone number 323-338-0104 ("UM0104") to negotiate the purchase of 20 pounds of methamphetamine for $850 per pound.

---

[1] The CS has been cooperating with the DEA Orange County District Office since June 2013. During this time, the CS has provided information that has led to multiple seizures of several hundred pounds of illegal drugs and multiple federal arrests. The information the CS provided leading to these seizures and arrests has been independently corroborated. The CS has also been cooperating with and providing information to the Los Angeles Interagency Metropolitan Police Apprehension Crime Task Force (LAIMPACT). There, the information the CS provided has contributed to several large seizures of over a thousand pounds of illegal drugs in total and multiple federal prosecutions. The information provided has been independently corroborated. The CS receives monetary payments for his/her services, and is also cooperating with DEA for legal residency consideration and assistance with valid status in the United States of America. The CS has no prior convictions. The CS has not been arrested and is not on probation or parole.

UM0104 sent a courier to deliver the suspected methamphetamine on August 12, 2025.

8. On August 12, 2025, DEA SAs, with assistance from the Los Angeles Metropolitan Police Apprehension Crime Task Force ("LAIMPACT"), and the California Highway Patrol ("CHP") conducted a buy-bust operation in the city of Placentia, California. During the operation, the CS met with a courier (later identified as TORRES VELAZQUEZ), who was sent by the UM to deliver 20 pounds of suspected methamphetamine to the CS at the Ralph's parking lot located at 710 N. Rose Drive, Placentia, CA. After the CS met with TORRES VELAZQUEZ and confirmed there were narcotics in the trunk of the gray Ford Fusion driven by TORRES VELAZQUEZ, CHP officers conducted a traffic stop of the vehicle.

9. During the traffic stop, a narcotics canine conducted an exterior sniff of the Ford Fusion and gave a positive alert to the trunk area of the vehicle. Officers found a black gym bag in the trunk that contained four clear vacuum sealed bags containing 10,028.1 gross grams of a white crystalline substance resembling methamphetamine. There was a bag of suspected black tar heroin in the center console, and several hidden compartments underneath the front seats of the vehicle.

10. I conducted a TRUENARC test on the suspected methamphetamine, which tested presumptively positive for methamphetamine. TORRES VELAZQUEZ was arrested.

**STATEMENT OF PROBABLE CAUSE**

11. Based on my review of law enforcement reports, conversations with other law enforcement officers, and my own knowledge of the investigation, I am aware of the following:

A. **Recorded Phone Calls and Text Messages in Spanish Between the CS and CHALO on August 10 and 11, 2025 and Between the CS and UM0104 on August 11, 2025**

12. On August 10, 2025, at approximately 1:03 p.m., in a recorded phone call, the CS told CHALO (who was using Mexico phone number 52-6221506210), that the CS would be heading out tomorrow morning. The CS told CHALO that he/she would be around the Anaheim area on Tuesday after midday, or if there was traffic, they could meet on Wednesday.

13. At approximately 7:03 p.m., in a recorded text message, CHALO texted the CS, "Hey how many bottles would it be?" At approximately 7:05 p.m., the CS texted CHALO, "About 20 mi Chalo." At approximately 7:06 p.m., CHALO texted the CS "Ok lets see who will accommodate us let see if it's the same supplier as always." According to the CS, "bottles" was code for pounds of methamphetamine.

14. On August 11, 2025, at approximately 11:40 a.m., in a recorded phone call, CHALO told the CS he was just waiting to hear if all was good for "the thing with the bottles" there. CHALO provided the CS with phone number 323-338-0104 and advised the CS to call "on behalf of Cousin."

  a. Based on my training and experience, and knowledge of this investigation, I believe that in this call,

CHALO told the CS to call the supplier ("Cousin") and make arrangements to pick up the methamphetamine.

15. At approximately 1:06 p.m., in a recorded phone call, the CS called phone number 323-338-0104 and left a voicemail saying, "Good afternoon, I'm calling on behalf of Cousin."

16. At approximately 1:13 p.m., in a recorded phone call, UM0104 called the CS. The CS suggested meeting in Yorba Linda the following afternoon. UM0104 asked how many "pieces" of "cars." The CS said "20" at "850." According to the CS, this referred to 20 pounds of methamphetamine at $850 per pound.

17. At approximately 4:12 p.m., in a recorded phone call, UM0104 asked the CS to meet the next day. UM0104 told the CS he had some "brown ones" available, which the CS understood as referring to heroin. The CS told UM0104 that the CS had a good client. UM0104 offered to provide a "little bit,"[2] which the CS understood as a sample of suspected heroin.

B. **Recorded Phone Calls and Text Messages in Spanish between the CS and UM0104 on August 12, 2025**

18. On August 12, 2025, at approximately 11:29 a.m., in a recorded phone call, UM0104 asked where the CS could meet up with "him," which the CS understood to refer to the drug courier. The CS suggested a location on Tustin Avenue in Anaheim. UM0104 said he would tell the "guy," which I believe referred to the courier, to be there at 1:00 p.m.

---

[2] All recorded phone calls and text messages were transcribed by SAs Alice Cubillos-Hall and Yolanda Galvez, who are fluent in Spanish.

### C. Buy-Bust Operation in the City of Placentia, CA and Arrest of TORRES VELAZQUEZ on August 12, 2025

19. On August 12, 2025, at approximately 12:15 p.m., the CS and the CS's vehicle were searched by agents for contraband, with negative results.

20. At approximately 12:51 p.m., the CS parked at the Ralph's parking lot on 710 N. Rose Drive in Placentia. The CS texted the location of the Ralph's to UM0104.

21. At approximately 1:05 p.m., in a recorded call, the CS described his/her vehicle to UM0104. UM0104 said his "guy" would be arriving in a gray Ford Fusion and would meet the CS at the Carl's Jr.

22. At approximately 1:12 p.m., agents observed a gray Ford Fusion enter the parking lot of the Ralph's. The CS walked to the Ford Fusion and talked to the driver, later identified as Moises Gerardo TORRES VELAZQUEZ. Agents observed the trunk of the Ford Fusion open and observed the CS looking into the trunk. The trunk closed and the CS walked back to his/her vehicle.

23. At approximately 1:24 p.m., agents observed the Ford Fusion exit the parking lot and drive northbound on N. Rose Drive.

24. At approximately 1:28 p.m., CHP Officers Granados and Stevens conducted a traffic stop of the gray Ford Fusion at the Arco located at 1202 E. Yorba Linda Boulevard in Placentia. TORRES VELAZQUEZ was the driver and sole occupant in the vehicle. The CHP Officers asked if TORRES VELAZQUEZ had a driver's license, and he said he did not.

25. Based on TORRES VELAZQUEZ not having a license, the CHP Officers instructed TORRES VELAZQUEZ to exit the vehicle. TORRES VELAZQUEZ provided the officers with a United States Permanent Resident Card, which TORRES VELAZQUEZ advised was fake.  TORRES VELAZQUEZ told them he was in the United States illegally.

26. CHP Officer Granados removed his trained narcotics canine, "Timo," from the patrol vehicle, and conducted an exterior sniff of the Gray Ford Fusion.  Timo gave a trained, positive response to the trunk area of the vehicle.

27. CHP Officer Granados opened the trunk door and observed a black gym bag in the trunk.  Timo jumped in the trunk, began to sniff the bag, and immediately gave a trained positive response.

28. CHP Officer Granados requested a tow truck to remove the vehicle to the Santa Ana CHP Office, where DEA SAs located the black gym bag in the trunk of the vehicle.  The gym bag contained four clear, vacuum-sealed bags containing a white crystalline substance resembling methamphetamine.  CHP Officers located a small plastic bag containing suspected black tar heroin in the center console of the vehicle.

29. During a further search of the vehicle, SAs and CHP officers located several hidden compartments underneath the front seats of the vehicle.  Agents located another small plastic bag containing suspected black tar heroin underneath the front passenger seat of the vehicle.

30. At the Santa Ana CHP Office, LAIMPACT Investigator Nelson Aguillon read TORRES VELAZQUEZ his Miranda Rights in Spanish. TORRES VELAZQUEZ said he wanted a lawyer and no interview was conducted.

31. DEA agents took custody of approximately 10,028.1 gross grams of suspected methamphetamine and 25 grams of suspected black tar heroin seized from the Ford Fusion. I conducted a TRUENARC test on the suspected methamphetamine, which tested presumptively positive for methamphetamine.

   D. **CS Debriefing Regarding Meeting with TORRES VELAZQUEZ on August 12, 2025**

32. On August 12, 2025, at approximately 1:42 p.m., DEA SA Bargeron and GS Gossen conducted a debriefing of the CS regarding the meeting with TORRES VELAZQUEZ.

33. The CS stated he/she walked to the driver's window of the Ford Fusion and spoke to TORRES VELAZQUEZ. The CS stated that, in order to be able to see the drugs and confirm they were in the car, the CS told TORRES VELAZQUEZ that CHALO had said the CS could see the product. TORRES VELAZQUEZ told the CS that it was in the trunk.

34. The CS stated that he/she looked in the trunk and saw a small, black lunch box type bag that contained the methamphetamine. The CS advised SA Bargeron that the methamphetamine was in small pieces and looked yellowish.

## CONCLUSION

35. Based on the foregoing, I believe that probable cause exists to believe that Moises Gerardo TORRES VELAZQUEZ has

committed a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A): Possession with Intent to Distribute More than 500 Grams of a Mixture or Substance Containing Methamphetamine).

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this  13   day of August 2025.


\_\_\_\_\_/s/ Autumn D. Spaeth_____
UNITED STATES MAGISTRATE JUDGE